IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL HADDAD**, *et. al., pro se* | * |
| Plaintiffs | * |
| v. | * Civil No. **PJM 13-3542** |
| **M&T BANK** | * |
| Defendant | * |

## MEMORANDUM OPINION

Michael and Theresa Haddad are citizens of Maryland who own a small business ("Astornet") that provides technology services to state and federal agencies. M&T Bank ("M&T") is a New York corporation that maintains its principal place of business in New York. The Haddads filed suit against M&T in the Circuit Court for Montgomery County, Maryland based on a dispute arising out of a line of credit M&T extended to Astornet. M&T subsequently removed the case to this Court. The Haddads have filed a Motion to Remand the case to Circuit Court [Paper No. 12]. Shortly after removal, M&T filed a Motion to Dismiss Plaintiffs' Complaint [Paper No. 9]. For the reasons that follow, the Haddads' Motion for Remand is **DENIED** and M&T's Motion to Dismiss is **GRANTED**.

I.

On April 28, 2005, the Haddads executed a promissory note in favor of Provident Bank of Maryland ("Provident") to secure a $150,000 line of credit extended to Astornet, the Haddads' business. The loan was partially guaranteed by the Small Business Administration ("SBA"). While executing the note on behalf of Astornet, the Haddads both signed an agreement personally guaranteeing the loan. The Loan and Guarantee Agreements stated that Provident

could collect the amount borrowed from any guarantors even if Astornet did not default.[1] In 2009, Provident was acquired by M&T Bank, which is incorporated and headquartered in New York. M&T became Provident's successor in interest with respect to loans such as the one made to Astornet.

Astornet eventually exhausted the line of credit and ran into financial trouble, leaving it unable to make its loan payments. In 2012, M&T informed the Haddads that, pursuant to the guarantee agreements, they were individually required to repay the entire amount borrowed by Astornet. In response, the Haddads asserted that they were only responsible for 15% of the amount borrowed and refused to pay. After M&T indicated that it would exercise its contractual right of foreclosure on the Haddads' home if the Haddads remained in default, the Haddads borrowed money from family to repay M&T. They ultimately repaid the entire amount of the loan which, with accumulated interest, totaled approximately $171,000.

In their Complaint, the Haddads assert that before executing the note, M&T told them that they were only personally responsible for 15% of the amount borrowed in the event of a default and that the SBA was responsible for the remaining 85%. They argue that M&T had an obligation to collect the other 85% of the amount borrowed from the SBA. Their Complaint, *inter alia*, asserts that M&T's actions violated the federal False Claims Act, 31 U.S.C. § 3729, and that liability was also created by virtue of Maryland contract law. The Haddads seek reimbursement for 85% of the amount repaid to M&T and to have their damages trebled pursuant to the False Claims Act.

---

[1] Under the heading "LENDER'S RIGHTS IF THERE IS A DEFAULT," the loan agreement states: "Without notice or demand and without giving up any of its rights Lender may: Collect all amounts owing from any Borrower or Guarantor." Def.'s Mem. Supp. Mot. Dismiss. Ex. A at 3. The guarantee agreements state "Lender is not required to seek payment from any other source before demanding payment from Guarantor" and specifically provides "Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA." Def.'s Mem. Supp. Mot. Dismiss. Ex. B at 2, 4, 6, 8.

Now, however, the Haddads ask to have the case remanded to state court based on lack of diversity of citizenship of the parties. M&T submits that diversity in fact exists, and federal question jurisdiction as well such that jurisdiction lies in this Court.

M&T, for its part, asks the Court to dismiss the False Claim Act claim, then judge the state causes of action insufficient as a matter of law and dismiss them as well.

## II.

### A.

Federal district courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000…and is between citizens of different states." 28 U.S.C. § 1332. A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

The Haddads contend that the Court does not have jurisdiction under § 1332 because the parties are not citizens of different states. While they do not dispute that M&T is headquartered and incorporated in New York, they submit that because they entered into the loan agreement with Provident, which was a Maryland corporation before it was acquired by M&T, there is no diversity of citizenship. They also argue that, since M&T has shareholders who are Maryland residents, there is no diversity. Both arguments are without merit.

For diversity purposes, a party's citizenship is established as of the time the suit is filed. *See Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 570 (2004). When two corporations merge, the citizenship of the surviving corporation is the only relevant factor for diversity purposes and the citizenship of the predecessor corporation becomes irrelevant. *See* 13F C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3623 (3d ed. 2013); *see also*

*Hoefferle Truck Sales, Inc. v. DivcoWayne*, 523 F.2d 548–49 (7th Cir. 1975). Corporate citizenship is determined only by the corporation's place of incorporation and principal place of business; it is not based on the citizenship of its shareholders. *See* 28 U.S.C. § 1332(c)(1); *Belle View Apartments v. Realty ReFund Trust*, 602 F.2d 668, 669 (4th Cir. 1979). The Court therefore concludes that M&T is a New York corporation, has citizenship diverse from the Haddads, that the jurisdictional amount exceeds $75,000 (85% of $171,000 = $143,350) and that the Court therefore has jurisdiction under § 1332.

**B.**

M&T also asserts that the Court also has federal question jurisdiction because the Haddads have alleged a violation of the False Claims Act. While M&T is correct that claims brought under the FCA present a federal question, *see, e.g., United States ex. rel. Black v. Hosp. Corp. of Marion County*, Civ. No. RDB–08–0390, 2011 WL 1161737, at *1 n.2 (D. Md. Mar. 28, 2011), when an ostensibly federal claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit," there is no federal question jurisdiction. *Oneida Indian Nation v. Oneida County*, 414 U.S. 661, 666 (1974); *see also Holloway v. Schweiker*, 724 F.2d 1102, 1105 (4th Cir. 1984) (holding that federal claim was so frivolous as to not present a federal question). As will be discussed in Section III.A, the Haddads' claim is clearly and indisputably not cognizable under the FCA because the Complaint fails to allege, as is required of such a cause of action, that M&T engaged in fraud against the Federal Government. *Cf. Davis v. Pak*, 856 F.2d 648, 651–52 (4th Cir. 1988) (upholding jurisdictional dismissal of a § 1983 action where claim obviously did not present a constitutional violation); *Foster v. Howard Cmty. Coll.*, Civ. No. RDB–13–1395, 2014 WL 758027, at *3 (D. Md. Feb. 24, 2014) (holding there was no federal question jurisdiction where jurisdiction was

predicated on statutes wholly inapplicable to plaintiff's claims). So there is no federal question jurisdiction in this case. But of course, since the Court does have jurisdiction based on diversity of citizenship, the absence of federal question jurisdiction is merely academic.

### III.

In evaluating the sufficiency of a complaint, a court gives liberal construction to pleadings drafted by *pro se* litigants such as the Haddads. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, Rule 12(b)(6) dismissal is required when the allegations in the complaint are far-fetched or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on naked assertions, speculation, or mere legal conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A complaint must provide factual allegations that "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal* 662 U.S. at 680). In evaluating the plausibility of a claim, the Court engages in a fact-specific inquiry that "draw[s] on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### A

The Court first turns to the viability of Count I, in which the Haddads allege that M&T violated the federal False Claims Act by misrepresenting the terms of the loan guarantee to them. The following discussion demonstrates why there is not only no federal question jurisdiction; the False Claims Act claim is simply untenable as a matter of law.

The False Claims Act allows private plaintiffs to sue a defendant who has defrauded the federal government. 31 U.S.C. § 3729. It does not provide a cause of action for parties who believe they have been the victim of someone's dishonesty. Since the Haddads have not alleged

5

that M&T defrauded the Government or was even involved in business with the Government, the Court concludes that Count I must be dismissed pursuant to Rule 12(b)(6).

Even if the Court were to reinterpret Count I as a state law fraud claim, it would still be pled with insufficient specificity. Under Federal Rule of Civil Procedure 9(b), claims for fraud must be pled with particularity and must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The Complaint does not address when or where the fraud occurred, who made the fraudulent claim, or what M&T gained by misrepresenting the terms of the guarantee agreement. The Haddads attempted to cure some of these defects by presenting new facts in the Opposition to Defendant's Motion to Dismiss. The specifics of fraud must be alleged in the Complaint; the Plaintiffs cannot fix the deficiencies of the Complaint in a brief in opposition to a motion to dismiss. *See Mylan Labs., Inc. v. Azko, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991). Even if the Court considered these new facts, the Haddads have still failed to identify when the fraudulent statements were made or describe how M&T benefitted from the fraud.

But again the absence of a federal question is of no consequence since the Court still has jurisdiction based on diversity.

**B**

Counts II and III must also be dismissed because they state no cognizable claim for relief.

Count II alleges that M&T wrongfully failed to collect the loan balance from the SBA despite knowing that the Haddads could not make the required payments on the loan. Count III alleges that M&T's attempt to collect the balance from the Haddads caused them financial distress and forced them to borrow money from family to avoid losing their home. The Haddads

specify no law that they believe M&T failed to comply with. Indeed the Court is unaware of any cause of action in Maryland that allows a plaintiff to sue a bank for collecting on a loan against a guarantor or that provides relief for borrowers who experience financial hardship as a result of a lender's attempt to collect on such a loan.

In their Opposition to Defendant's Motion to Dismiss, the Haddads attempt to recast Count III as a claim for intentional infliction of emotional distress. Plaintiffs cannot, in a brief in opposition to a motion to dismiss, amend a complaint and recharacterize its claims. *Mylan Labs., Inc*, 770 F. Supp. 2d at 1068. Even if they could, Maryland law is clear that creditors may collect debts even if doing so causes mental anguish for the borrower. *See Dick v. Mercantile-Safe Deposit & Trust Co.*, 492 A.2d 674, 677 (Md. Ct. Spec. App. 1985). The facts alleged come nowhere close to satisfying the elements required for the extraordinary action for intentional infliction of emotional distress. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

C.

Count IV does no more than recite some (but not all) of the elements of a detrimental reliance claim, and provides zero factual details to support the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) ("A pleading that offers…'a formulaic recitation of the elements of a cause of action will not do.'"). A claim for detrimental reliance in Maryland requires:

> 1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce actual and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). The plain language of the loan guarantee agreement states that the Haddads would be fully liable for repayment of the loan to Astornet. Their suggestion that the lender made a promise directly to the contrary is not

7

only precluded by the Parol Evidence Rule, *Equitable Trust Co. v. Imbesi*, 412 A.2d 96, 107 (Md. 1980); the Complaint does not explain how M&T knew its statements would induce inappropriate action on the part of the Haddads nor does it provide any details about what action the Haddads took that they would not have taken otherwise. The Haddads also fail to explain why their reliance on the alleged misrepresentations was reasonable, especially given the flatly contradictory language of the Guarantee Agreement.

The Court concludes that Count IV must be dismissed for failing to state a claim.

## IV.

For the foregoing reasons, Plaintiffs' Motion for Remand [Docket No. 12] is **DENIED**, and Defendant's Motion to Dismiss [Docket No. 9] is **GRANTED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**May 6, 2014**